The case on our docket is 10-172 Dawson v. Jack Schmidt Ford. Mr. Cassander, is that right? Yes. You ready to speak? Go ahead. Good afternoon. May it please the Court, Counsel. My name is Eric Cassander. I'm here on behalf of the plaintiffs' appellants, Adam and Lindsay Dawson. The trial court's judgment should be reversed and the matter remained so that the trial court consider facts that it did not weigh or assess regarding the dealer's failure to disclose to the Dawsons that the excursion was a manufacturer-buyback. The trial court did not consider pertinent facts because, as a matter of law, it made an erroneous interpretation of the Illinois deal, and made an erroneous interpretation of the degree of knowledge required by the dealer in order to commit fraud. The trial court erred when it required that the Dawsons needed to prove the dealer had actual knowledge that the excursion was a manufacturer-buyback and failed to consider whether the dealer had constructive knowledge of that fact or whether the dealer should have known that fact. The trial court erred as a matter of law when it failed to consider whether the defendant's willful blindness or determined ignorance was actionable under the consumer fraud. The trial court also committed an error of law in failing to consider this case based upon a misrepresentation standard. In failing to consider whether constructive knowledge is actionable under the Consumer Fraud Act, and failing to consider this case under a misrepresentation standard, the trial court did not make factual findings as to whether the defendant should have known the excursion was a manufacturer-buyback and whether the defendant misrepresented the title history of the excursion through the title application. As a result of this culmination of errors, the Dawsons are seeking that the matter be remanded for the trial court to consider the facts based on a proper application of the law. The trial court never made a factual determination as to whether or not the excursion being a manufacturer-buyback was a material fact. Rather, the trial court erred as a matter of law in ruling that the defendant was exempt from disclosing the manufacturer-buyback status and branded title history to the Dawsons based upon the Illinois Vehicle Code. The trial court's ruling and the trial court's statement at trial said that this fact, the vehicle was a manufacturer-buyback with a branded title, can never be a material fact. Now, the Illinois Supreme Court determined in Kymick v. Suzuki that a material fact exists where a buyer would have acted differently knowing the information or if it concerned the type of information upon which a buyer would be expected to rely in making a decision of whether to purchase. And instead of considering Adam Dawson and Lindsey Dawson's testimony that they would not have bought the excursion if they had known it was a manufacturer-buyback with a branded title history, and the trial court did not consider whether this is the type of information that purchasers want to know in buying a vehicle, it ruled, it erroneously ruled the defendant was exempt from disclosing such information because of the Illinois Vehicle Code. However, the Illinois Vehicle Code deals with the manufacturer's duty to disclose the buyback status of a vehicle. In this case, the Dawsons are suing a dealer, not the manufacturer. The statute is silent as to the duty of a dealer to disclose this fact, and it's silent for a reason. Basic statutory construction does not allow the trial court to apply this statute to a dealer, and that's what the trial court did in this case. It extended the statute. It's applying to dealers as well. Additionally, the reason the statute only discusses a manufacturer's duty to disclose this fact to the first retail purchaser is because that's the only transaction that the manufacturer has any control over. A manufacturer buys a vehicle back. They repair it. They do whatever they do. A manufacturer doesn't then sell it. A manufacturer is authorized dealers to sell it. So a manufacturer puts it up for sale at its auction that's only available to its authorized dealerships. In this case, it was a Ford. Ford got it. Ford sold the vehicle at its auction that only Ford authorized dealerships could attend. A Ford authorized dealership buys the vehicle. Well, Ford has some control over that authorized dealership, and Ford can say, if you want to be an authorized dealer and sell our reacquired vehicles, these are the policies that you have to follow, and one of those policies is you have to disclose it to the first retail purchaser. After that authorized dealership sells it to a purchaser, any average consumer down the street, Ford no longer has any control over how that vehicle is then resold or whether that individual consumer is going to disclose anything about the vehicle. Now, let me, I have a question. This vehicle was placarded, wasn't it? Pardon me? It was placarded. Yes, there was a sticker on the vehicle. Who, is it the federal government, or who says what kind of sticker it should be, the size and the shape and the description? Somebody surely must. To tell you the truth, I believe it's the manufacturer's own policies as to how they do it, and I believe it's a state-by-state policy. For instance, Illinois doesn't have a Illinois... On the title, on the title. I'm talking about the thing on the A-pillar, the sticker. It's my understanding that... Or was it on the door? It was on the door frame. Okay, Ford's got it on the door. So you wreck the car and you lose the door. It's on the door jamb. I didn't think it was. I thought it was on the door. No, it's on the door jamb where the door closes. Okay, A-pillar, yeah. Now, who makes that sticker? Ford? Ford puts that sticker on it. So they placarded it as a buyback. Correct. So it's got two placards on it. Well, it has the title, history... It's got the date of manufacture, country of manufacture. That's on the one. Right, there's two stickers. The VIN, I think, has the gross vehicle weight, the color, and all that other information, and there's an additional sticker. So with respect to... My question is, was that still on the vehicle at the time of its second... third sale? Yes. Okay. That sticker was on the vehicle throughout the history of the vehicle. It's never been removed. So Ford can only disclose or only require that a manufacturer disclose that... or, excuse me, Ford can only require that its authorized dealership disclose that fact. That's why the Illinois Vehicle Code discusses disclosure to the first retail purchaser. Once it's sold, how that individual consumer discloses it, Ford doesn't have any control over that. And what is that wording on that? It doesn't say on manufacture buyback, or does it? Well, as far as Ford disclosing it, that's in the Ford's reacquired vehicle policy. I mean, I'm talking about the Illinois Code. The Illinois does not require it disclosed. Well, the Illinois Vehicle Code says that a manufacturer must disclose it to the first retail purchaser. That's what the Illinois Vehicle Code states. Okay. But now this car came out of... or whatever. Was it a truck or car? It was an excursion. Okay. Yeah. It came out of Florida, didn't it? Yes. And it went to Illinois from Florida? Correct. It was bought back in Florida. The Florida title was branded as a manufacturer buyback, and then it was placed in one of these Ford options, and it was bought by an Illinois dealership. Well, I thought there was somebody in between. There is. I believe it was Reese Ford that bought the vehicle after it was bought back. Reese Ford filled out the disclosure form that Ford requires them. Did they sell it to the plaintiff, or did they sell it to somebody else? They sold it to Deeker Construction, who drove the vehicle, and then Deeker Construction later sold the vehicle to Minard Auto Sales, and the defendant bought the vehicle from Minard Auto Sales. Okay. So as a result of the trial court's ruling, or if this court were to uphold the trial court's ruling, we'd be setting a policy that a vehicle that has been a manufacturer buyback and has a branded title is not a material fact, and even if a car dealership knows and has actual knowledge of this fact, it can conceal those facts from prospective purchasers. The trial court asked counsel for a defendant, are you saying it couldn't be a material fact under the consumer product, even if they knew because they didn't have to disclose it because it was disclosed to the first purchaser. So in affirming the trial court's ruling, this court would be saying that it's okay to ignore the fact that the vehicle is a manufacturer buyback. You'd be creating a law that says it doesn't matter that the vehicle is a manufacturer buyback because it's not material, and you can just ignore those facts, and that's what I believe the defendant did in this case, is they ignored those facts. At trial, the defendant's service manager, Mr. Bill Whitman, testified that the service writers who create a repair order before the vehicle sold to prospective purchasers, they inspect it, and the service writers who create this repair order, even if they would have seen it was a manufacturer buyback vehicle, and Mr. Whitman testified on page 142 of the record, it would make no difference on a used car inspection. So even if they do know it, they're just going to ignore that fact. Further, the technician who performed the inspection on the car for the defendant, Mr. Mark Miller, he testified that even if he would have seen the sticker, he testified he doesn't recall seeing it, but even if he did, or excuse me, he doesn't recall performing this inspection, but even if he did see the sticker, it means nothing to him, and he wouldn't have told anybody about it. Now, if this was a rebuilder, that would be on the Illinois title. Well, it should be on the Illinois title, yes. Well, I mean, it should. I mean, I thought it had to be. I mean, I've seen it. How else are you going to do it? I don't know how you could do it. Well, I mean, you can wash what's called washing the title. Take it to Alabama. You can take it to a different state that doesn't have that branding requirement and apply for a new title. But now if Ford, or whoever they have Ford, if this was a rebuilder, it would still be on the Illinois title, wouldn't it? Yes, because Illinois has a rebuild branding requirement. They require that. Yes. So what the trial court ruled, and what this court would be affirming, or setting a policy if it did affirm the trial court's ruling, is that dealerships can know this fact and can conceal it. Even if they know it, they don't have to say anything about it because it's not material, even with actual knowledge. Even though all the evidence before the court, the trial court, was that such facts diminish the vehicle's value. Now, you say actual, this is where I've got a problem. You say actual knowledge. But did the judge find that they had no actual knowledge? The trial court made one factual ruling in this case, and that was that the defendant did not know this vehicle was a manufacturer by name. That is the only factual ruling that the trial court considered. And while I disagree with that, I'm not even appealing that ruling. What the trial court didn't do is it didn't consider the facts regarding whether the defendant should have known of this fact or its willful blindness or determined ignorance to this fact was actionable. So I'd ask that the matter be remanded in order for the trial court to make the factual determination whether concealing this fact is a material fact because an error is a matter of law. As a matter of law, it's not a material fact. The trial court also committed an error of law when it failed to consider this case based upon the willful blindness or determined ignorance standard. Again, the rule, the only factual ruling that the court made was that the defendant or excuse me, the Dawson's must prove actual knowledge on behalf of the dealership. And in these types of cases, this is a fraud case. Unless an employee from the dealership comes in at trial and admits that, yes, we knew of this fact and we concealed it, no consumer could ever win these types of cases. So the policy that would be setting and affirming this trial court's ruling was that so long as the dealership keeps its eyes closed and its mouth shut, they can avoid liability for concealing these types of facts. The trial court didn't consider the defendant's appointment of an unqualified mechanic to conduct the vehicle inspection, the fact that that mechanic was never even trained to conduct the vehicle inspection. It didn't consider the testimony from all the witnesses that the two stickers on the vehicle were obvious. It didn't consider Mr. Klein, Hank Klein's testimony, who was the plaintiff's expert in this case, who testified that a dealership, somebody in the business of buying and selling vehicles, should have known that this vehicle was a manufacturer buyback. They should have known seeing this sticker that was placed on the vehicle. I have another question. Is it possible to get all the bins of all the dealer buybacks, I mean manufacturer buybacks in the United States? Well, every Ford dealership could put the information. Put on the computer? Yeah. When a vehicle is bought back by a manufacturer, it's in that manufacturer's internal system. So you could find all the VINs in the United States? Well, an authorized dealership could find all the VINs just for its manufacturer. Right, but you could go to GM, Chrysler, you know. And then you could also then go take the bin and find all the owners. Well, I don't know if you can search. I don't know if you can just search for manufacturer buyback and then pull up all the bins. I know you can search by VIN when you push the VIN in. Yeah, if you've got a VIN, yeah. And then it comes up. I don't know if you can just, you know, as far as the dealership's internal systems, whether you can just put what vehicles have been bought back by the manufacturer. I'm assuming these are Lemon Law cases. Pardon me? Are these Lemon Law cases? There's a number of reasons why a vehicle can't be bought back. Lemon Law cases. In Florida there was, prior to enacting the Lemon Law, you have to go through the Florida Dispute Resolution Board. It's an informal resolution process, and you can appeal that decision in the trial court. This case, the vehicle did go, was through the Florida Dispute Resolution Board, and then it was eventually bought back in, pursuant to the language in here, it was bought back, pursuant to goodwill, by both. Is there any, like, a recall buyback on recalls, or are they just victim? Well, as far as recalls, recalls are a little bit different than defects. Okay. And in this case, we know why this vehicle was bought back. We know the problems that the vehicle had. What was it? The engine was stalling and quitting. So it's like fuel injection problem. There was some drivability issues. It's in Exhibit 8-9 of the plaintiff's exhibit. It shows why all the, as part of the disclosure that Ford has, it states all the problems that the prior owner complained of, and that's what has to be disclosed to that first retail purchaser. No, no. So the first time it goes back, do they get a list, the buyer then, or just has that sticker? They don't get a list of why it came back, or do they? As far as the first retail purchaser? Yeah, first. Yeah, the first retail purchaser does get a list. That's part of the Ford's real part of vehicle disclosure. Okay. It states the problems that were on it, or at least the complaints made by the prior owner. So the trial court didn't consider a lot of this evidence showing that the defendant, their willful blindness or determined ignorance, they should have known of this fact. And now the trial court is ruling in the defendant's claim that you can't conceal a fact you don't know. While it sounds as a general proposition, at the same time you can't close your eyes to the obvious truth and then try and claim ignorance to escape liability. The trial court's reliance and the defendant's reliance on Rockford Memorial Hospital versus Harvillesco is misplaced. That case discussed deceptively concealing facts. And in that case it relied on the holding in Tots versus Continental DuPage Acura. It is a second district case. And in Tots, the material issue, the material fact is the vehicle had been in a prior accident. The dealership said, I didn't know it was in a prior accident, and they concealed that fact from the purchaser. In upholding the trial court's ruling in favor of the plaintiff in the Tots case, the trial court imputed evidence onto the defendant, saying, well, you should have known this. And part of the reason they did that is because the plaintiff's expert said the defendant should have known this car was in a prior accident. Also, the trial court, excuse me, the appellate court in Tots, stated the cursory inspection would have revealed one experience in the automobile business that the Accord had been extensively damaged in an accident. And I believe the same evidence that the court was able to infer knowledge on the dealership in Tots is present in this case as well. We also have an expert who testified that the defendant should have known that this vehicle was manufactured by them. The defendant should have seen this sticker on the vehicle. Also, we have these stickers. Everybody that testified said that these stickers were obvious, that they don't blend in in any way. Even Mr. Miller, the individual who performed the inspection, said it was obvious, said it didn't blend in, said there's normally not two stickers there. Well, there is now, isn't there? There is two stickers on a new car. As far as now, I don't know what it is now. As Mr. Miller testified, there's normally not two stickers. It's just the one with the VIN number. There would be three now if it was. And it's known as just the VIN number, the gross vehicle weight, the color, things like that. Also, he performed this 106-point inspection. Part of the things that he inspected was the doors, the body panels, the seat adjuster, which is just a few inches from where these stickers are. As in Tots, where the court determined a cursory inspection would have revealed to somebody experiencing the auto injury that the car was in an accident, I believe a cursory inspection would have revealed to the defendant that this vehicle had been a prior manufactured buyback, and the court can impute knowledge on the defendant. Also, as the 4th District opined in Crowder v. Bob Kogeling Enterprises, under similar facts, that willful blindness to effect concealed is actionable under the Consumer Fraud Act. And there, the testimony was regarding a prior branded type, similar to this case. And there, the seller of the vehicle in the Crowder case testified that, well, I didn't know that the car had a prior branded title, so I couldn't have concealed that fact from the prospective purchaser. But the court said, well, your determined ignorance was why you didn't know of that fact. Well, here's where my question is. They call it a branded title, but it's not branded. The Florida title is branded, but the Illinois title is not branded. The actual title that the dealership had in this case was not branded. However, the title history... But you call it a branded title. That's why I'm having a little problem. Sure. And in Crowder, it's very... The Crowder case is similar here. In Crowder, the seller had a clean type, had a clean Illinois title. But a prior title was branded. I believe it was a salvaged vehicle. It was branded as a salvaged vehicle. And what the seller, dealership in Crowder testified was, listen, I had a clean title. That's all I cared about. That's all I knew. I couldn't conceal that fact from a prospective purchaser because I didn't know it. I had a clean title. And I believe in the Crowder case, the court said, well, you're determining, or this is the only reason you did not know. And you should have known of the prior branded title history in that case. And I believe the evidence is very similar in this case as well. Ms. Angie Schmidt, defendant's general manager, she testified that the title that the dealership had, based on that title, the dealership knew that at least one other title existed. However, Ms. Schmidt testified that she didn't care about any of these other prior titles. The title she had was clean. That's all she cared about, which is very similar to the testimony in Crowder. Additionally, I think it's even more than that, though, because on the title application that the dealership fills out, there's a box right in the middle of the title application that states prior branded title and a box to check yes or no. So the Illinois Secretary of State is specifically asking for that information, and Ms. Schmidt testified that they did nothing to find out about that information. Additionally, the trial court failed to consider this fact based on a misrepresentation. Again, the title application that's filled out by the dealer and given to the Dawson's has a box to check. If it's not checked, it means one thing, that there is no other branded title. If it is checked, it means another thing, that there is a prior branded title. And in this case, the box is not checked, saying there is no other branded title, but we know that the evidence has, the unrefuted evidence has shown that there is a prior branded title. You'll get time for rebuttal now. Thank you. Ms. Lipsenberg. Thank you, Your Honor. May it please the Court, Mr. Cassander. My name is Deanna Lipsenberg, and I represent the defendant, Jack Schmidt Ford, Inc., in this case. As you're aware, this case proceeded to a bench trial. Following a bench trial, the standard of review is whether the judgment is against the manifest weight of the evidence. As stated another way, a judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. First, I'd like to deal with this assertion by plaintiff that they fled a misrepresentation. This case is an omission case. If you look at the plaintiff's complaint, they clearly pleaded in their complaint and or concealed the material following facts with the indent to induce the plaintiff's. Plaintiffs continue with a sole allegation of paragraph 6A of their complaint that the excursion had been repurchased by the manufacturer as a one-off buyback. Repeatedly through their complaint, they complain over and over again that the seller intentionally concealed or omitted to tell them. An omission case is different from a misrepresentation case. An affirmative misrepresentation case deals with an actual statement by the seller. This car is X. It's an actual statement. In this case, the plaintiffs are arguing that Jack Schmidt Ford omitted to tell something. Based upon that and their complaint, the court relied upon the Rockford case and said that the defendant had to have actual knowledge of the item of which they are allegedly concealing or omitting to tell. Otherwise, you're turning an omission case into an act. Otherwise, you're turning that into an actionable omission. And negligent omissions is not the proper standard. It's whether you are intentionally omitting or concealing the fact. And so the court based its decision on the Rockford case, stating that the plaintiff had to show that the defendant had knowledge. In this case, the trial court very plainly said in its order that it found that the defendant's witnesses were credible and that there was no actual knowledge of this manufacturer's buyback. I'd like to respond to a question that the court posed to the plaintiff earlier. Is there a registry or a database listing all of these buybacks? There is no such national database. So effectively, what the plaintiff is asking the court to do is to tell dealerships that they have to investigate every title that they receive on a used car to find the history of it. Was the inspection properly done in your opinion? I believe it was. It was up to the minimal standards, you think? I believe it was. Mr. Miller testified he looked at the VIN in the window. Okay. Is there any disagreement as to whether or not there was a sticker on the inside of the door? No, there is no disagreement. The sticker is inside the door. And Mr. Miller indicated he didn't look there. The fellow that did the inspection missed that, I guess. He did.  And so at best, the plaintiffs have proved that the defendant was negligent in failing to discover the sticker. But again, under the Consumer Fraud Act, that's not the proper standard. In this case, they're saying there was an omission. And a negligent omission is not the proper standard. It has no intent. So it was not a proper inspection? I don't know if it wasn't a proper inspection. He just missed it. The plaintiffs testified that they drove this car for a year and a half. Well, if he should have caught it and he missed it, then it would not be a very good inspection. Well, he said that he was not trained to look for the specific sticker. In his testimony, he had never dealt with a manufacturer's buyback. These cases are not that rare. And he had never been trained to look for the sticker. He said that he was trained to look for the VIN in the window in the dash. It's an actual plate that's affixed to the car, whereas the stickers can be removed. If the car has had frame damage, the sticker won't be there. And so they are trained to look at the permanent VIN number in the dash. And so based upon that, he missed the sticker. Rodney Menard, the dealership that sold the vehicle to Jax-McCord, he never noticed the sticker. And so it's not one person missing the sticker. In this case, nobody saw the sticker. Nobody looked for the sticker. The plaintiffs drove the vehicle for a year and a half and said that they had never seen the sticker inside their vehicle, even though they drive this vehicle every day. So in this case, the plaintiff is asking the court to extend the Illinois Motor Vehicle Code. The Illinois Motor Vehicle Code says that manufacturers, and in our interpretation, dealers, because manufacturers don't sell their vehicles direct to the public, they must sell through a dealer, must require, must disclose, to the first retail purchaser. In this case, going back through the history, Reese Ford sold it to Deeker Construction. It's in the record that Deeker Construction signed the acknowledgement this is a manufacturer's buyback. Reese Ford complied with the law. The statute is silent as to the remaining retail purchasers in the chain of title. Similarly, in the Supreme Court said, in Robinson v. Toyota, that compliance with truth in lending is an absolute defense to the consumer product. Similarly, we would argue that compliance with the Illinois Motor Vehicle Code is a complete defense to the consumer product. I think they're similarly situated cases. In this case, Deeker Construction disclosed this to the purchaser. Detachment 4 didn't know that this was a manufacturer's buyback. Accordingly, how could they disclose it to the purchaser? What the plaintiffs are asking dealerships to do is anytime they get a used vehicle into inventory, that they would have to research the entire vehicle's history to find out if there was a manufacturer's buyback in the history. As indicated, Illinois does not brand titles for manufacturer's buyback. There's no depository.  The sticker or placard was put on there by Ford based upon Ford's own policy, but there's no statute requiring that that sticker be affirmatively placed there. And so we're arguing that the plaintiff is asking this court to extend what is required of dealerships far beyond what they currently do. The dealership takes the title that's presented to it. The plaintiff argued that filling out the application for vehicle title, that they didn't check the box, other branded title, constitutes an affirmative misrepresentation, and the plaintiff alleges in their brief that they pled an affirmative misrepresentation, and the court refused to consider that. If you look at their complaint, their complaint is completely devoid of any facts or mention of the Illinois vehicle title application. You turn to the third page of Plaintiff's Exhibit 10 in the record. There's instructions on how to fill this out prepared by the Secretary of State. The instruction state, if the vehicle title contains buyback, lemon, or other branding from outside Illinois, also include the state. Well, it's undisputed that the title that Jack Schmidt Ford was presented to did not have any brand. They complied with the instruction that was provided by the Illinois Secretary of State. Further, the application for vehicle title is filled out after the sales transaction. How can the plaintiff state that they relied on any representation or non-representation made in this in purchasing their vehicle when this is filled out to transfer the title after they purchased it? You don't transfer a title to someone before they bought the car. And so how can the plaintiff show that they relied on this? So based on that, their argument fails. Their argument fails under the Illinois Consumer Fraud Act. Additionally, the plaintiffs allege that they plugged this misrepresentation in their complaint. The Code of Civil Procedure clearly states that if a claim or defense is founded upon a written instrument, a copy thereof must be attached to the complaint. Not only do they fail to mention this vehicle application in their complaint, they don't attach it as an exhibit. They did attach to the complaint with their exhibits a copy of the retail installment contract, the sales invoice. There was an addendum to the financing regarding gap insurance. And then they also attached a car fax report. But they can't come back later on appeal after the case has been decided and say, well, we were using this. This is what we meant to state in our complaint. And so for those reasons, we would ask that the trial court's decision be affirmed. Thank you. I give you rebuttal, counsel. Thank you. The first defendant talked about the standard review. He said the standard review is the manifest way to the evidence standard. Now, while I agree for a factual finding, however, when the trial court makes rulings of law or findings of law or makes a ruling on the issue of law, it's a de novo standard. And the defendant even admits to the same in his brief on page 15. It discusses what is a factual ruling. And then, like I said, there's only been one factual ruling, which is the defendant did not know. What we're appealing is all the legal rulings that the trial court made. I have a question. You filed a car fax as an exhibit? Yes. Now, does that show? I don't know what a car fax shows. Does that show complete chain of title? A car fax shows, yes, it shows owner one, owner two, owner three, owner four. So owner two would have been Ford Motor Company. No, owner three. Owner two, I believe, is Ford Motor Company. I'm sorry, because Ford owned it. Then it becomes sold. A dealer gets it. They don't know. Yeah, I guess they do own it. Ford applied for the title in its name. They bought the vehicle back. Oh, okay. So the second title that was issued for the vehicle after the first owner was in Ford Motor Company. And that shows up on car fax. Well, I don't know if that shows up, that Ford Motor Company is the second owner. But it shows owner one, owner two, because it doesn't state any owner's name. However, what the car fax report also does show is that there's a problem with Mr. Dawson's title. Because his title shows that there's no brand on it, but that a prior title did. So what the car fax shows, essentially, is that this title was washed. It had a brand on it. It came to Illinois. Now it no longer has a brand on it. It says that on the car fax. It says that on the car fax report is that there's a problem with Mr. Dawson's title. And did the buyer get a car fax in this case? No. The defendant? The dealership did not. I mean, sorry, the plaintiff. The Dawsons did not get a car fax report. They didn't ask for a car fax report. Mr. Dawson had bought two cars previously from the defendant. And he said he relied on what the dealership told him, and he didn't feel any need to run a car fax report. Furthermore, with respect to the misrepresentation that was made in this case, I would point to misrepresentation in many paragraphs of our complaint. The defendant never moved to dismiss our complaint. They never made a demand for a bill of particulars. The evidence at trial showed a misrepresentation was made that, through this title application, that was part of the transaction, saying, here's the title application. Nothing is checked showing where it was made. That was still done after the transaction? Well, it's all at the same time of the transaction. It's all the day you buy the car, you say, yes, I'm going to buy this vehicle. Here, fill out the paperwork. That's some of the paperwork that the dealership presented to the Dawsons to fill out. And the Dawsons testified that, had they seen that that box had been checked, that there was a prior branded title, they would not have purchased this vehicle. So, again, the evidence at trial, there was no objection at trial showing the misrepresentation was made. At trial, I clearly stated to the trial court that this case is based on more than just an omission, but also a misrepresentation. There was, again, no objection made at that time. And, again, even if you consider this case just on an omission standard, again, you can't close your eyes to the obvious truth to avoid liability. Otherwise, every dealership in this state would have an incentive not to look at a vehicle. Because if you look at a vehicle, you know, if you don't look at a vehicle, you can never conceal anything that was made to the dealership there. Now, the defendant states that they have to go on this huge expedition to uncover this. The fact that the vehicle was a manufacturer's buyback. And the trial court, you know, addressed counsel's argument there. And the trial court stated to counsel that it's not a huge expedition. The trial court stated to counsel on page 250 of the record, I think, counsel, you're overstating it. There were simple ways to find out rather than a huge expedition. Again, there was these stickers on the vehicle. The dealership did an inspection of the vehicle. Also, the repair, the service writers who write the repair order for the inspection writes, wrote about, pulled these forward internal documents, which indicate that the vehicle was a reacquired vehicle, a manufacturer's buyback. Finally, which wasn't really addressed was the trial court also ruled as a matter of law that the Mormon Doctrine bars the plaintiffs from recovering damages in this case. Now, the Fifth District has expressly ruled in Warren v. LeMay that when a statute expressly authorizes the recovery of damages, the Mormon Doctrine does not apply. And it dealt specifically with an omission under the Consumer Fraud Act and held that the defendant who was guilty of omitting something under the Consumer Fraud Act asserted that defense, the Mormon Doctrine economic loss theory as a defense. And the Fifth District expressly held that the Consumer Fraud Act allows for this recovery of damages and the court stated recovery of damages is beyond doubt. Thank you. Thank you, counsels, for your argument and your briefs. We'll take them at our invitement and give back to you all shortly.